BARRETT SMITH, JR., Plaintiff, *v.* ANITA SMITH, Defendant.

Supreme Court, New York County, March 17, 1934.

*Charles J. W. Meisel,* for the plaintiff.

*Rorke & Kane,* for the defendant.

COLLINS, J. The plaintiff moves for reargument of the defendant's motion to dismiss the complaint as legally insufficient. The motion to dismiss was granted.

The complaint strives to allege a cause of action to annul a

marriage performed in Maryland on June 15, 1933, when the plaintiff husband was twenty and a half years old and the defendant wife twenty-two years old. The basis of the complaint is that the defendant induced him to declare his age to be over twenty-one; Such misstatement of the plaintiff's age, so the complaint avers, makes the marriage " void or voidable." The complaint alleges that " the issue of said marriage is a female child."

The complaint sets forth the Maryland law regulating marriages and the issuance of licenses therefor. Section 7 of article 62 of the Maryland Annotated Code provides: " No such license shall issue unless the male be above the age of twenty-one years and the female above the age of eighteen years; provided, however, that if the parents or guardian assent thereto, in person or by writing, attested by two witnesses, such license may issue and the fact of such assent shall be made part of the record aforesaid."

The legal question presented by the motion is whether the misrepresentation of the plaintiff's age in the procurement of the license constitutes cause for invalidating the marriage.

The plaintiff insists that the law of Maryland governs. That law, however, completely negatives the plaintiff's contention of invalidity or voidability and decisively reveals that the complaint is legally insufficient. Indeed, the Maryland courts have gone so far as to hold that even the absence of a marriage license is insufficient to invalidate a marriage.

Thus, in *Feehley* v. *Feehley* (129 Md. 565) one of the two questions determined by the court was whether a marriage " should be held to be valid, notwithstanding the conceded fact that no license for the marriage had been obtained as required by law." Sustaining the marriage, the court said: " The contention that the failure to secure a license rendered the marriage void must likewise be overruled. While the statute provides that no persons within the State ' shall be joined in marriage until a license shall have been obtained from the clerk of the Circuit Court for the county in which the marriage is to be performed, or if in Baltimore City, from the clerk of the Court of Common Pleas,' or unless banns shall have been published as therein described, or except in the case of marriages according to the ceremony used by the Society of Quakers, and while punishment by fine is directed to be imposed upon ministers and others who marry persons without a license, there is no purpose expressed in the statute that a marriage otherwise validly contracted and celebrated shall be void if the prescribed license shall not have been procured. Code, Art. 62, secs. 4, 11. On the contrary, there is an implied recognition of the efficacy of marriages solemnized without a license in the provision that a minister who shall ' marry '

persons in the absence of such official authorization shall be subjected to the stated penalty. The requirement of a license preliminary to marriage is wholly of statutory origin. At common law, according to the decisions of this Court, a religious ceremony, in celebration of the civil contract, was sufficient to make the marriage lawful. *Denison* v. *Denison* [35 Md. 380]; *Richardson* v. *Smith*, 80 Md. 93; *Jackson* v. *Jackson*, 80 Md. 187. In view of the important considerations of morality and legitimacy involved, it is manifestly a sound and just rule of construction that statutes providing for marriage licenses are not held to have the effect of nullifying, for non-compliance with their terms, a marriage valid at common law, unless such an intention is plainly disclosed. This salutary principle has been applied in numerous decisions. * * *

" *The regulative purposes of the license statute are useful and important, but they are sought to be enforced by pecuniary penalties pronounced against those officiating at unlicensed marriages, and not by the radical process of rendering void and immoral a matrimonial union otherwise validly contracted and solemnized.*" (Writer's italics.)

The cases on which the plaintiff leans do not support him.

In *Corder* v. *Corder* (141 Md. 114), cited by plaintiff, the plaintiff was a girl sixteen years of age who was induced to marry the defendant by his false representations as to his moral character and habits; the license was procured by perjured testimony in that not only the age of the parties was misrepresented but their names and residences. More, *the marriage was never consummated.* Concluding its opinion, the court there said: " the plaintiff was but a child not yet out of school, when the defendant, to whose care she had been entrusted by her parents, after first attempting to seduce her, went off with her to another state and, without the knowledge or consent of the parents and by perjured statements to the state officials at the clerk's office, obtained a license and had the marriage ceremony performed." Obviously the *Corder* case is no authority for the plaintiff.

And in *Cunningham* v. *Cunningham* (206 N. Y. 341), also cited by plaintiff, the guiding consideration which led to the conclusion there reached was the fact that the marriage was not followed by cohabitation. The court said (on p. 344): " And yet where the contract has been made which has been followed by cohabitation, it has not been considered good policy to declare such marriage void, for it might be followed by the birth of children whose legitimacy might be affected thereby."

It should be emphasized that the Maryland law recognizes that even a male under twenty-one years of age is capable of entering

into the state of matrimony. True, such male must have the personal or written assent of his parents or guardians, but that does not detract from the force of the recognition.

It is not the policy of the law of either New York or Maryland to nullify the marriage of a male of twenty and a half years to a woman of twenty-two where a child has resulted from the union and where the effect of the annulment would be to wholly relieve the male of the support of his wife and child. Marital responsibilities are not so easily discarded or shirked.

Prior to the motion to dismiss the complaint, the defendant moved for counsel fee and temporary alimony, which motion was, in the main, granted by Mr. Justice SHIENTAG. Plaintiff now argues that " in making the decision said justice naturally had to sustain the complaint." Rather, Mr. Justice SHIENTAG's decision sustains the validity of the marriage. Had that justice been persuaded that the marriage was void or voidable, no counsel fee or support would have been awarded. The invalidity or voidability of the marriage would have been an impregnable defense to the application for counsel fee and alimony. The award presupposes the existence of a valid and unassailable marriage.

Accepting the allegations of the complaint as true, they are not legally sufficient to state a cause of action either under the law of New York (*Bays* v. *Bays*, 105 Misc. 492) or that of Maryland (*Feehley* v. *Feehley, supra*).

Accordingly, the original decision is adhered to.