THOMAS B. HORTON, JR., ET AL. *v.* GRACE H. HORTON, ADMINISTRATRIX.

[No. 29, January Term, 1929.]

128

*Decided March 21st, 1929.*

The cause was argued before BOND, C. J., PATTISON,. ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Benjamin Chambers,* with whom was *Daniel B. Chambers:* on the brief, for the appellants.

*L. B. Keene Claggett,* with whom were *J. Kemp Bartlett,. Jr.,* and *Bartlett, Poe & Claggett,* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Thomas B. Horton died intestate on August 28th, 1928, in Baltimore City, Maryland, the place of his domicile. He·

left to survive him Grace H. Horton, his widow, and Thomas B. Horton, Jr., and Marie G. Gischel, children of a former marriage. On September 1st, 1928, the day after his funeral, the widow applied for, and was by the Orphans' Court of Baltimore City granted, letters of administration on his estate, and on September 13th, 1928, his two children filed a petition praying the court to revoke the letters granted to Mrs. Horton, and to appoint her with Mrs. Gischel as co-administratices of the estate, or to appoint her as co-administratrix, on the ground that they had had no notice of Mrs. Horton's application nor any opportunity of presenting to the court reasons why they or one of them should be allowed to administer the estate, and that therefore the grant of letters was premature and improvident. Mrs. Horton answered the petition, and the matter was set for a hearing before the Orphans' Court of Baltimore City on October 19th, 1928. At the hearing the court refused to allow the petitioners to offer evidence in support of their petition, but, after hearing counsel for the respective parties, passed an order dismissing it. This appeal is from that order.

In addition to the petition and answer the record contains the following stipulation of fact: "The parties were present in court with their counsel and witnesses, there was no stenographer, but one was sent for; thereupon the court proceeded to listen to argument of counsel upon the petition and answer and after hearing such argument announced its decision, counsel for the petitioner having offered to put his witnesses on the stand to prove that the petitioners had no notice of the application for letters and the administratrix having offered to prove with her witnesses that notice had been given to them, but the court said that they had reached a decision and did not care to hear testimony."

The main question submitted by the appeal is whether the orphans' court acted improvidently in granting letters of administration to Mrs. Horton, without having notified the appellants, both of whom resided within its jurisdiction, of her application. Subsidiary to that is the propriety of the

unusual procedure followed by the court in refusing to allow the petitioners to offer evidence in support of their petition. In the appellee's brief it is asserted that the effect of that procedure was to set the case for hearing on petition and answer, but obviously that is a fallacy. While there are no formal pleadings in orphans' courts (*Munnikhuysen v. Magraw,* 57 Md. 193; *Hignutt v. Cranor,* 62 Md. 218), according to the usual practice, if a petitioner in any proceeding pending in any such court desires to controvert the allegations of any answer to his petition, he should file a replication thereto (*Bagby's Excrs. and Admrs.,* sec. 148), and if he proceeds to a hearing without doing that he may be held to have consented to a hearing on petition and answer. But such a conclusion would not be in the nature of a judgment by default as in a common law court, but an inference drawn from the petitioner's failure to indicate in some manner that he intended to deny the allegations of the answer, and, where such an intention is plainly manifested in any manner, he should not be deprived of an opportunity to support the averments of his petition by evidence, nor should he be bound by the allegations of the answer. *Ibid; Barroll v. Peters,* 20 Md. 172; *Long v. Long,* 115 Md. 130.

In the case last cited Judge Boyd for this court said; "We have not deemed it necessary to examine the records in the various cases in this state to ascertain how far it can be said that the general practice is to file replications in the orphans' court, but in the recent case of *Gallagher v. Martin,* 102 Md. 115, there was none, and this court reversed the order of the orphans' court because it did not set the case for hearing and afford the appellant an opportunity to offer evidence in support of the allegations of his petition, which were denied by the answer." He also called attention to the decision in *Hall v. Claggett,* 48 Md. 223, where it was held that, even in a court of equity, a replication is not essential where it appears that the case was treated as at issue by consent of the parties either express or implied. He further stated in that opinion that "there is no time fixed by statute within which a replication must be filed in the orphans'

court, and it would be holding parties to a much stricter account than is done in equity, where the statute does in terms prescribe the time, to dismiss a petition merely because no replication had been filed, although no previous steps had been taken to require it. There should at least be some procedure equivalent to that in equity, such as a 'rule further proceedings,' before the orphans' court should deprive a petitioner of this right to be heard for that reason." And in *Barroll v. Peters, supra,* it was held that the court could not act upon a "bill, answer and exhibits," unless by summission or consent of the parties.

In this case it is conceded that both the petitioners and the respondent offered to submit evidence supporting the petition and answer respectively. By so doing they treated the case as at issue, and the respondent waived any right she may have had to take advantage of the petitioner's failure to file a replication. The court, therefore, in hearing the case on petition and answer, acted improvidently, and in considering the propriety of its ultimate decision the allegations of the petition will be taken as admitted for the purposes of this appeal.

The next question is whether the court acted improvidently in granting letters to Mrs. Horton without notice to the appellants. Whether it did or not depends upon the construction to be given Code, art. 93, sec. 18, and sec. 32. The former section creates a class of eligibles in cases where the decedent leaves a husband or widow and children, to any one of whom the court may in its discretion grant letters. The section last cited provides that "it shall not be necessary to give notice to a party entitled to administration if he be out of the state, nor shall it be necessary to summon or notify collateral relations more remote than brothers and sisters of the intestate, in order to exclude them from the administration; and no relations, except a widow, child, grandchild, father, brother, sister or mother shall be considered as entitled unless they shall apply for the same." If the language of that section has any meaning at all, it is that, where children of the decedent residing within the

132

state are members of the class entitled to preference in the grant of letters, they are entitled to notice before any letters of administration on the estate of their decedent are granted, unless they voluntarily appear, or unless in some way they waive that right. This court, in construing that section (then section 33), said in *Dalrymple v. Gamble*, 66 Md. 308: "The law regulating the appointment will be found in article 93, sections 30, 31, 33. These sections made it necessary that brothers or sisters should be summoned or notified, and if they decline or refuse to appear and the creditors or more remote collaterals do not themselves apply, administration may be granted in the discretion of the court." And while it did not cite it, in reaching that conclusion it followed *Pollard v. Mohler*, 55 Md. 289, where it was said: "The right of administration is one not resting in the discretion of the orphans' court, but is founded on positive law. *Nusz v. Grove*, 27 Md. 401; *Carpenter v. Jones*, 44 Md. 628. And, in the protection of this right, the Code requires that the court shall summon or notify the parties thus entitled. Rev. Code, Art. 93, secs. 17-33."

Upon the statute, as construed by these cases, it is in our opinion clear that letters should not have been granted to the appellee unless and until the appellants had been summoned or notified of the intestacy of the decedent, and given an opportunity of applying to the court for a grant of letters of administration to them or either of them, or they had waived that right. But it appears from the petition that, not only were they not summoned or notified, but that they were actually misled by the appellee into believing that no steps would be taken until she had seen them and arranged for an amicable settlement of the estate. Under such circumstances the grant of letters to Mrs. Horton was premature and improvident.

But appellee contends that the court in granting letters to Mrs. Horton, who was a member of a class entitled to preference, acted in the exercise of an irreviewable discretion, and that the failure to notify appellants was either an error of no consequence, or at least one that cannot be corrected by

this court; but in that they are mistaken. We are not called upon by this appeal to review the exercise of a discretion, but the failure to exercise it. The power given to orphans' courts to select and grant letters to one of a class entitled to administration is not a whimsical, an arbitrary, or an absolute discretion, but a judicial discretion, which must be exercised in accordance with the rules and forms of law as declared by the statute, and, while its acts done in the exercise of the discretion so reposed in it will not be reviewed by this court, its acts done in contravention or disregard of the plain letter and intent of the statutes prescribing the course it shall pursue in exercising that discretion will be reviewed. When section 18 provides that the court may at its discretion grant letters to a child or to the husband or widow as the case may be of the intestate, it means that the court shall actually exercise a discretion, and that it shall make its choice after considering the relative merits and fitness of the applicants, and their respective claims to consideration, and not that it may act without regard to such consideration, solely at its pleasure or caprice. *Thomas, Admr., v. Knighton,* 23 Md. 326. The right of administration is a substantial right granted by statute, and persons entitled under the statute to apply for letters are entitled at least to be heard in respect to their claims. To assume that the judgment of the court would not be influenced by competent evidence relating to the propriety of its choice is to assume that it would disregard its plain and manifest duty, and that we are unwilling to do. The members of the court which decided this case are honorable, capable, and conscientious officials, who may have acted in accordance with some current but erroneous practice. But no practice, however generally, or however long, it may have prevailed, can override the clear and manifest meaning of a statute. In dealing with a case involving the same principle, it was said in *Wash., B. & A. R. Co. v. Kimmey,* 141 Md. 250 *et seq*: "The general rule is that the disposition of a motion for a new trial is within the sound discretion of the trial court, and is not a subject of appeal. There is a review of the decisions to that effect in the recent

case of *Chiswell v. Nichols,* 139 Md. 442. The exception now under consideration, however, is not directed to the action of the court in overruling the motion for a new trial, but to its exclusion of evidence by which its judgment and discretion in regard to the motion should properly have been influenced. The defendant was entitled to the exercise of a sound discretion in the disposition of its motion. A discretion could not be characterized as sound which wholly disregarded evidence by which its exercsie should have been aided. * * * In *Mattox v. United States,* 146 U. S. 140, the Supreme Court, in ruling upon an exception to the exclusion of certain affidavits offered in support of a motion for a new trial, said: 'The allowance or refusal of a new trial rests in the sound discretion of the court to which the application is addressed, and the result cannot be made the subject of review by writ of error *(Henderson v. Moore,* 5 Cranch, 11; *Newcomb v. Wood,* 97 U. S. 581), but in the case at bar the District Court excluded the affidavits, and, in passing upon the motion, did not exercise any discretion in respect of the matters stated therein. Due exception was taken and the question of admissibility thereby preserved.' The affidavits having been found to be competent, the court concluded its discussion of the question with the statement: 'We should, therefore, be compelled to reverse the judgment because the affidavits were not received and considered by the court; but another ground exists upon which we must not only do this, but direct a new trial to be granted.' * * * This appeal is not from an order overruling the motion for a new trial, but from a judgment rendered after a new trial had been refused, and we are dealing with an exception which complains of the exclusion of evidence tending with practical certainty to produce the result to which the motion was directed. Unquestionably this action was prejudicial to the defendant's rights, and it deprived the court of the only available means of exercising a sound discretion in determining whether an opportunity for a retrial of the case should be afforded." The reasoning of Judge Urner in that case is peculiarly appli-

cable to the question involved in this, and is we think conclusive.

*Dorsey v. Dorsey,* 140 Md. 167, is cited apparently as authority for the proposition that the appellants were not entitled to the notice contemplated by section 32, article 93 of the Code, but in that case the court was primarily interested in the construction of section 16, which refers to the grant of letters where the intestacy is not notorious, but, in referring to section 32, it said: "So far as the widow is concerned, it is sufficient to say that, even if she was entitled to notice, she knew that letters had been granted in ample time to appeal, or she could have applied to the court to revoke the  appointment, if she had any ground for such action, but she did neither, and filed this petition asking to be appointed co-administrator, in effect thereby waiving any absence of notice she may have been entitled to." In that case the petitioner did not ask for the revocation of letters alleged to have been improvidently granted, but only asked that she be appointed a co-administrator, while here the primary purpose of the petition is to procure the revocation of the letters, and the prayer for the appointment of a co-administrator is secondary and alternative, and such a prayer did not amount to a waiver of appellants' rights.

In our opinion, therefore, the court erred in refusing to permit the appellants to offer evidence in support of their petition, and it will be necessary to reverse the order appealed from and remand the case for further proceedings in accordance with the views expressed in this opinion.

> *Order reversed and cause remanded for further proceedings in accordance with the views expressed in this opinion, costs to be paid out of the estate.*